UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CIARA ROBINSON,

                            Plaintiff,                    **OPINION AND ORDER**

   -against-

VINEYARD VINES, LLC, and DANIEL             15 Civ. 4972 (VB)(JCM)
PEZZOLA, THERESA PEZOLLA,
NICOLE CORCORAN, and LOUIS
ARCESE (*Individually*), jointly, severally
or in the alternative,

                            Defendants.
------------------------------------------------------------X

      Before the Court is a discovery dispute between plaintiff Ciara Robinson ("Plaintiff") and defendants Vineyard Vines, LLC ("Vineyard Vines"), Daniel Pezzola, Theresa Pezolla, Nicole Corcoran and Louis Arcese (collectively, "Defendants").[1] Defendants assert work-product protection and/or attorney-client privilege over certain investigative documents created on behalf of Vineyard Vines. (Docket Nos. 27, 36, 38, 41). Plaintiff disputes the assertion of work-product protection and argues that Defendants have waived any privilege by asserting an affirmative defense that Vineyard Vines reasonably investigated Plaintiff's claims. (Docket Nos. 27, 39, 40). The Court heard oral argument on these issues on December 22, 2015 and February 1, 2016. For the reasons set forth below, I find that the documents at issue are privileged work product.

---

[1] Judge Briccetti referred four discrete discovery disputes to this Court for resolution. (Docket No. 29). This Court resolved three of the disputes during a December 22, 2015 conference and requested additional submissions on this remaining dispute.

1

## I. Background

Plaintiff commenced this action pursuant to Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*), the New York Human Rights Law (New York Executive Law § 290 *et seq.*) and New York common law. (Complaint[2] ¶¶ 159-89). The relevant facts are as follows.

Vineyard Vines is a clothing company that operates a retail store (the "VV Store") in Central Valley, New York. (Complaint at 1, ¶¶ 11-12). During the relevant time period, both Plaintiff and Mr. Pezzola were employed at the VV Store. (*Id.* ¶¶ 10, 13). Plaintiff alleges that Mr. Pezolla repeatedly sexually harassed her and ultimately raped her at the VV Store in late December 2012. (*Id.* ¶¶ 29-69). Plaintiff alleges that she reported the rape to store manager Nicole Corcoran on or about December 27, 2012, (*id.* ¶ 70), and to district manager Louis Arcese sometime thereafter, (*id.* ¶¶ 77-78), and that she met with Mr. Pezolla, Ms. Corcoran, floor supervisor Theresa Pezzola and fellow employee Gabryelle Gonce regarding the incident on December 30, 2012, (*id.* ¶¶ 103-117). Plaintiff further alleges that she was constructively discharged from the VV Store on January 1, 2013 in retaliation for her complaints against Mr. Pezzola. (*Id.* ¶¶ 136-37).

On January 9, 2013, Plaintiff submitted a written complaint by email (the "January 9 Email") to Karen Pepin of the Human Resources Consulting Group ("HRCG"). (Complaint ¶ 143). At that time, HRCG "provided the full range of human resources services to Vineyard Vines, which . . . did not have its own internal human resources employees or department." (Mitola Aff.[3] ¶ 3). In the January 9 Email, Plaintiff recounted her allegations at length and

---

[2] Refers to Plaintiff's Verified Complaint, filed in this action on June 25, 2015. (Docket No. 1).

[3] Refers to the Affidavit of Kimberly Mitola. (Docket No. 41, Ex. 1). Ms. Mitola is currently a Senior Human Resources Generalist with HRCG. (*Id.* ¶ 1). She was a Human Resources Generalist with HRCG and worked with Vineyard Vines during the relevant time period in January 2013. (*Id.* ¶ 2).

explained that she had "filed a report against Daniel Pezzolla for sexual harassment at the state police in Monroe" and that she had scheduled two meetings with "Human Rights . . . to further go into this case and talk to them about the incident with Dan." (Docket No. 36, Ex. A).

Ms. Mitola of HRCG became aware prior to Plaintiff's alleged constructive discharge that "other Vineyard Vines employees had complained about [Plaintiff's] misconduct in the workplace." (Mitola Aff. ¶ 5). Therefore, "[o]n or about December 31, 2012, HRCG engaged in its usual human resources administration concerning those employee complaints and [Plaintiff's] subsequent resignation, including gathering information and documents regarding her misconduct in the workplace." (*Id.*). Ms. Mitola affirms that, upon receiving the January 9 Email, "it became apparent . . . that [Plaintiff] had filed or was in the process of filing a charge of discrimination with the New York Commission on Human Rights (the 'Charge of Discrimination') and had filed a complaint with the police," and that therefore the focus of HRCG's investigation "shifted to gathering the information concerning the claims in the [January 9 Email] that Vineyard Vines would need to respond to the Charge of Discrimination." (*Id.* ¶¶ 6-7).

On or about February 20, 2013, Plaintiff's counsel sent a letter (the "February 20 Letter") to Vineyard Vines "for Settlement Purposes Only," in which counsel requested "copies of all relevant employment records," stated that the letter was "written without prejudice to the rights, remedies and defenses of [his] client, all of which are hereby expressly reserved," and attached a litigation hold notice. (Docket No. 36, Ex. B). Upon receipt of the February 20 Letter, Vineyard Vines "immediately contacted its outside employment law counsel . . . and its outside corporate counsel," who began to investigate Plaintiff's complaints. (Docket No. 36 at 4). HRCG provided "[a]ll of the materials that HRCG had compiled as a result of its information-gathering and

3

investigation regarding the [January 9 Email] . . . to counsel for Vineyard Vines on or about February 21, 2013." (Mitola Aff. ¶ 8).

Currently before the Court is a discovery dispute over certain documents (the "Investigative Documents") that Defendants assert were created as part of the investigation into Plaintiff's claims <u>after</u> HRCG received the January 9 Email.[4] (Docket No. 36 at 3). Defendants assert the work-product privilege with respect to all of the Investigative Documents and also assert the attorney-client privilege with respect to certain correspondence between Vineyard Vines' counsel and Vineyard Vines employees. (<i>Id.</i> at 7-9). Defendants further note that they "have not raised the adequacy of the investigation as an affirmative defense and, therefore, there has been no waiver of any privilege." (<i>Id.</i> at 6). Plaintiff argues that: (1) the subset of Investigative Documents created by HRCG is not protected work product because Defendants have failed to establish the relationship between Vineyard Vines and HRCG, and there is no evidence that the documents generated by HRCG were prepared in anticipation of litigation; and (2) by asserting the affirmative defense that Vineyard Vines' investigation was reasonable, Defendants have waived any privilege with regard to all of the Investigative Documents. (Docket No. 39).[5]

---

[4] The Court has <u>not</u> reviewed these documents <i>in camera</i>.

[5] Plaintiff argued at the February 1, 2016 conference that this affirmative defense waived the privilege as to documents created during Vineyard Vines' <i>post-employment</i> investigation because Vineyard Vines had a duty to investigate the sexual harassment claims of its <i>former</i> employee. However, because Plaintiff has been unable to produce any authority establishing such a duty, (Docket No. 40), and because Defendants no longer assert the affirmative defense that Vineyard Vines' investigation was reasonable, <i>see</i> Section II(B), <i>infra</i>, the Court will not analyze this line of argument.

## II. DISCUSSION

### A. Work Product

The work-product privilege shields from disclosure materials prepared "in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). In the Second Circuit, a document is deemed "in anticipation of litigation" if "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation." *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998) (emphasis in original) (citations omitted). It is "well established" that the privilege does not apply to "documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation." *Adlman*, 134 F.3d at 1202.

In employment discrimination cases, courts often find that an employer's investigation "shift[s] from an internal investigation in response to [a plaintiff's] claims to an investigation for the purposes of mounting a legal defense against any such claims," and hold that documents created during the latter portion of the investigation are privileged work product. *Prince v. Madison Square Garden, L.P.*, 240 F.R.D. 126, 128 (S.D.N.Y. 2007) (ordering defendants to "produce all internal investigation materials related to [plaintiff's] claims that were created prior to the commencement of [the litigation defense] investigation"); *see also, e.g., Julie Angelone v. Xerox Corp.*, No. 09-CV-6019-CJS, 2012 WL 537492, at *3 (W.D.N.Y. Feb. 17, 2012) ("once the investigation shifted to defending against Plaintiff's EEOC claims, the resulting documents became privileged."); *Geller v. N. Shore Long Island Jewish Health Sys.*, No. CV 10-170(ADS)(ETB), 2011 WL 5507572, at *4 (E.D.N.Y. Nov. 9, 2011) ("Once that shift in the investigation occurred . . . the documents generated during the investigation became

privileged."); *Welland v. Trainer*, No. 00 Civ. 0738(JSM), 2001 WL 1154666, at *2 (S.D.N.Y. Oct. 1, 2001) ("However, the investigation focus changed once Plaintiff was terminated. At that point, the investigation continued because of the need to prepare for the likelihood of litigation. Thus, the documents produced [after Plaintiff was terminated], are protected by the work product privilege."), *aff'd sub nom. Welland v. Citigroup Inc.*, 116 F. App'x 321 (2d Cir. 2004) (summary order).

Documents may receive work-product protection even if they are not prepared at the direction of counsel. The text of Federal Rule of Civil Procedure 26(b)(3)(A) affords protection to material prepared "by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)"—not merely material prepared by or for an attorney—and several courts, including courts in the Second Circuit, have interpreted this rule according to its plain meaning. *See, e.g., Wultz v. Bank of China Ltd.*, 304 F.R.D. 384, 394 (S.D.N.Y. 2015) ("Notwithstanding the common description of the doctrine as the 'attorney' work product doctrine . . . it is not in fact necessary that the material be prepared by or at the direction of an attorney."); *Geller*, 2011 WL 5507572, at *3 ("the attorney work product doctrine does not require that the documents be prepared at the behest of counsel, only that they be prepared because of the prospect of litigation.") (citations and internal quotations omitted).

Finally, materials classified as work product may nonetheless be discovered if, *inter alia*, a party shows that it has a "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A). *See also, e.g., Upjohn Co. v. United States*, 449 U.S. 383, 400 (1981) (the work-product doctrine "permits disclosure of documents and tangible things constituting attorney work

product upon a showing of substantial need and inability to obtain the equivalent without undue hardship").

Here, HRCG is clearly a "representative" of Vineyard Vines for the purposes of the work-product doctrine—it was, at the very least, acting as Vineyard Vines' "consultant" when it provided "the full range of human resources services to Vineyard Vines . . . including responding to employee issues that were brought to HRCG's attention by Vineyard Vines' managers or employees." (Mitola Aff. ¶¶ 3-4). I also find that the documents generated after HRCG received the January 9 Email were created "in anticipation of litigation." HRCG affirms that "as of January 9, 2013, the focus of the information-gathering by HRCG concerning [Plaintiff] shifted," and it was HRCG's "understanding at the time that the information that HRCG was gathering in response to the [January 9 Email] . . . was to be provided to Vineyard Vines and/or its counsel for their use in defending against the [claims in the January 9 Email]." (Mitola Aff. ¶ 7). This argument is supported by the facts. It is clear from the January 9 Email that Plaintiff had reported the alleged incident to the police and that she had filed or was going to file a complaint with "Human Rights," which HRCG believed was a reference to the New York Commission on Human Rights. (Docket No. 36, Ex. A; Mitola Aff. ¶ 6). Finally, Plaintiff has not argued or shown that she has a "substantial need" for the Investigative Documents.

Therefore, I find that all of the Investigative Documents are protected by the work-product privilege and may be shielded from disclosure.[6]

---

[6] Defendants also assert the attorney-client privilege with respect to certain correspondence between Vineyard Vines' counsel and Vineyard Vines employees. (Docket No. 36 at 9). However, because the Court finds that all of the Investigative Documents are protected by the work-product doctrine, and because Plaintiff does not dispute Defendants' assertion of the attorney-client privilege except to argue that the privilege has been waived, (Docket No. 39 at 2-3), the Court will not analyze whether a subset of the Investigative Documents is doubly shielded by the attorney-client privilege.

## B. Waiver

In a discrimination action in which the alleged harasser is a "supervisor" and "no tangible employment action is taken," an "employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided." *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2439 (2013) (citing *Faragher v. Boca Raton*, 524 U.S. 775, 807 (1998) and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765 (1998)). This "affirmative defense is referred to as the *Faragher/Ellerth* defense." *Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 295 F.R.D. 28, 40 (E.D.N.Y. 2013), *aff'd*, 29 F. Supp. 3d 142 (E.D.N.Y. 2014). "An employer may demonstrate the exercise of reasonable care, required by the first element, by showing the existence of an antiharassment policy during the period of the plaintiff's employment, although that fact alone is not always dispositive." *Ferraro v. Kellwood Co.*, 440 F.3d 96, 102 (2d Cir. 2006) (citations omitted). As to "the second element, proof that an employee has unreasonably failed to use the employer's complaint procedure normally suffices to satisfy the employer's burden." *Id.* (citations omitted).

"When an employer puts the reasonableness of an internal investigation at issue by asserting the *Faragher/Ellerth* defense, the employer waives any privilege that might otherwise apply to documents concerning that investigation." *Koumoulis*, 295 F.R.D. at 41. *See, e.g.*, *Brownell v. Roadway Package Sys., Inc.*, 185 F.R.D. 19, 21-22, 26 (N.D.N.Y. 1999) (holding that defendant waived privilege by asserting the affirmative defense that "[p]laintiff's claims are barred because . . . [defendant] fully and fairly investigated [plaintiff's] allegations and took prompt and appropriate action consistent with the results of its investigation."). However, an

assertion of the *Faragher/Ellerth* defense does not waive the privilege as to documents generated during "investigations related to EEOC charges or future litigation," *Koumoulis*, 295 F.R.D. at 41 (citation omitted), unless the defendant "relies on those documents for its *Faragher/Ellerth* defense," *Angelone*, 2012 WL 537492, at *3. In other words, the privilege is not waived where an employer does not seek "to use the investigation itself as a 'sword' and a 'shield.'" *Welland*, 2001 WL 1154666, at *1 (holding that privilege was not waived where "the nature and sufficiency of the investigation [was] not raised by [d]efendants' counterclaim and affirmative defense") (citation omitted); *accord Geller*, 2011 WL 5507572, at *4 (holding that defendants did not waive privilege where counsel "affirmatively represented to the Court that defendants have no intention of 'using the investigation to avoid liability.'") (citation omitted). Further, if a party decides to "drop[] the asserted defense, . . . there will of course no longer be any basis for implying a waiver." *Sealy v. Gruntal & Co.*, No. 94Civ.7948 (KTD)(MHD), 1998 WL 698257, at *5 (S.D.N.Y. Oct. 7, 1998).

Here, Defendants appear to assert a *Faragher/Ellerth* defense. Their twelfth affirmative defense (the "Twelfth Affirmative Defense") states that:

> Plaintiff's Complaint is barred, in whole or in part, because at the time of the alleged events set forth in Plaintiff's Complaint, Defendant [Vineyard Vines] had in place policies against the conduct alleged and Plaintiff unreasonably failed to avail herself of those remedial measures and/or to take advantage of any preventative or corrective opportunities provided by Defendants or to avoid harm otherwise.

(Docket No. 9 at 37). However, Defendants affirmatively represented on the record at the February 1, 2016 conference and in their letters to the Court that they are not asserting the reasonableness of any investigation as a defense in this litigation. As to any post-employment investigation, Defendants state as follows:

> Most significantly, Defendants do not rely in this litigation on any investigation conducted [sic] Vineyard Vines or its agents or representatives in response to

> Plaintiff's postemployment allegations, particularly because Plaintiff did not complain of any alleged harassment until after she resigned her employment. To the extent that Defendants assert in their Twelfth Affirmative Defense that Plaintiff "unreasonably failed to avail herself of . . . remedial measures", this refers to her failure to complain of any alleged sexual harassment during her employment. Should this Affirmative Defense be read by the Court to suggest that Defendants are asserting an affirmative defense that they investigated any allegations by Plaintiff after her resignation, Defendants are prepared to amend their Answer to specify that it applies to Plaintiff's term of employment only.

(Docket No. 36 at 7) (second alteration in original). Defendants also are not asserting that they conducted any investigation into Plaintiff's claims during Plaintiff's term of employment. *See* Docket No. 41 at 3 ("Defendants have not asserted in the instant matter that they investigated any complaints of sexual harassment or other discrimination that Plaintiff made during her employment (because Defendants contend that she did not make any) or took prompt and appropriate action as a result of any such investigation."). It appears that Defendants are merely asserting as a defense: (1) the existence of anti-harassment policies; and (2) Plaintiff's failure to take advantage of those policies during her term of employment. In other words, Defendants have clarified that they never meant to assert a *Faragher/Ellerth* defense, or are at the very least "dropping the asserted defense," as to any *investigation* conducted into Plaintiff's claims on behalf of Vineyard Vines. *Sealy*, 1998 WL 698257, at *5.

Given these representations by Defendants' counsel, I find that Defendants have not waived any privilege as to the Investigative Documents by asserting the Twelfth Affirmative Defense.[8]

---

[8] Plaintiff claimed in its original submission on this issue that Defendants waived any privilege as to the Investigative Documents by asserting in their position statement (the "Position Statement") to the United States Equal Employment Opportunity Commission ("EEOC") that "Vineyard Vines Investigated Her [Plaintiff's] Allegations and Found Them To Be Unsubstantiated" and by citing purported facts from the investigation. (Docket No. 27 at 3) (alteration in original). Plaintiff did not raise this claim again in any written submission to the Court but, nevertheless, this Court considered and rejects the argument. Pursuant to Federal Rule of Civil Procedure 502, "a voluntary disclosure in a federal proceeding or to a federal office or agency . . . generally results in a waiver *only* of the communication or information disclosed." Fed. R. Civ. P. 502(a) advisory committee's note (emphasis added). The record is devoid of any evidence that Defendants have made any unfair "selective" or "misleading"

10

## III. CONCLUSION

For the foregoing reasons, I find that the Investigative Documents are protected by the work-product privilege. However, if Defendants refer to or rely on the Investigative Documents in asserting a *Faragher/Ellerth* defense in this litigation, then Defendants will waive the privilege and will be required to immediately produce the Investigative Documents.

Dated: March 4, 2016
White Plains, New York

SO ORDERED:

_____
JUDITH C. McCARTHY
United States Magistrate Judge

---

presentation of evidence in this litigation. *See, e.g., In re Gen. Motors LLC Ignition Switch Litig.*, 80 F. Supp. 3d 521, 533 (S.D.N.Y. 2015) ("the company has—as of today's date—neither offensively used the [disclosed material] in litigation nor made a selective or misleading presentation that is unfair to adversaries in this litigation") (citation and quotation marks omitted). Therefore, to the extent Defendants made any limited disclosures in the Position Statement, those disclosures did not waive work-product protection as to the undisclosed Investigative Documents. Furthermore, to the extent Plaintiff is arguing that Defendants asserted a *Faragher/Ellerth* defense in their Position Statement, that argument fails because—as is discussed in this section—Defendants have dropped any *Faragher/Ellerth* defense as to their investigation into Plaintiff's claims.

11